Shawna Parks (CA Bar No. 208301)
SParks@DRALegal.org
Meredith J. Weaver (CA Bar No. 299328)
MWeaver@DRALegal.org
Desiree Robedeaux (CA Bar No. 360254)
DRobedeaux@DRALegal.org
**DISABILITY RIGHTS ADVOCATES**
2001 Center Street, 3rd Floor
Berkeley, California 94704-1204
Tel: (510) 665-8644
Fax: (510) 665-8511

Rachel Weisberg (IL Bar No. 6297116), *pro hac vice* pending
RWeisberg@DRALegal.org
**DISABILITY RIGHTS ADVOCATES**
300 South Wacker Drive, Floor 32
Chicago, IL 60606-6680
Tel: (332) 217-2319
Fax: (212) 644-8636

*Attorneys for Plaintiffs*

**THE UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO / OAKLAND DIVISION**

JACQUELINE GARRETT, KATHI PUGH, and DORENE GIACOPINI, and others similarly situated

Plaintiffs,

v.

WHC Worldwide, LLC and WHC zShuttle, LLC,

Defendant.

**Case No. ________________**

**COMPLAINT FOR VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12181, *et seq.*) AND THE UNRUH CIVIL RIGHTS ACT (CAL. CIV. CODE § 51, *et seq.*)**

**CLASS ACTION**

**INTRODUCTION**

1. Defendants WHC Worldwide, LLC and WHC zShuttle, LLC operate an airport transportation service called SuperShuttle Express/Execucar ("SuperShuttle") that serves over 70 airport locations in the United States with "affordable and convenient airport rides"[1] but completely excludes individuals who require wheelchair-accessible vehicles from these services.

2. Plaintiffs Jacqueline Garrett, Kathi Pugh, and Dorene Giacopini (collectively "Plaintiffs") bring this action, on behalf of themselves and other similarly situated individuals, to remedy Defendants' discrimination against individuals with mobility disabilities who want to, but cannot, use SuperShuttle's airport transportation services because they do not provide services to individuals who need wheelchair-accessible vehicles ("WAVs").

3. Despite SuperShuttle's public representation that "[i]n compliance with federal regulations, [it] provide[s] reservations with Independent Operators who offer accessible vehicles to customers with disabilities, including those who use wheelchairs,"[2] Plaintiffs have repeatedly been told by SuperShuttle representatives that no such options are available.

4. As detailed below, Defendants exclude people with mobility disabilities who need wheelchair-accessible vehicles from accessing their airport transportation services, in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq*. ("Title III" or "ADA"); and California's Unruh Civil Rights Act, Cal. Civ. Code § 51, *et seq*. ("Unruh Act").

5. This litigation is intended to halt SuperShuttle's ongoing discrimination against individuals with mobility disabilities. Plaintiffs seek declaratory and injunctive relief on behalf of the putative classes to redress Defendants' violations of federal and state law and seek statutory damages solely on their own behalf to redress Defendants' violation of California state law.

---

[1] *See* Press Release, SUPERSHUTTLE EXPRESS, *SuperShuttle is Alive and Well in 2024 Operating as SuperShuttle Express* (March 20, 2024), https://www.supershuttle.com/is-supershuttle-still-in-business.

[2] *See* Terms & Conditions, *Special Handling – Accessible Transportation*, SUPERSHUTTLE EXPRESS, https://www.supershuttle.com/terms/ (last visited May 4, 2025) (click "Accessible Transportation" dropdown arrow under "Special Handling" section).

6. Plaintiffs request that Defendants implement reasonable modifications in their policies, practices, or procedures to afford people with mobility disabilities who need WAVs full and equal access to and use and enjoyment of SuperShuttle services in a manner equivalent to the service it offers to individuals without mobility disabilities.

7. Because Defendants' practices adversely impact thousands of disabled individuals, Plaintiffs ask the Court to certify their claims for class treatment and to order relief that will benefit all members of the class.

8. Prior to filing this complaint, Plaintiffs asked WHC Worldwide, LLC to take action to provide WAV airport transportation service at all U.S. airport locations to ensure wheelchair users have access to SuperShuttle's services on an equally available basis as non-wheelchair users. Unfortunately, the company did not respond to Plaintiffs' request.

## JURISDICTION

9. Plaintiffs bring this action under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq*. (hereinafter "Title III" or "ADA") and the California Unruh Civil Rights Act, Cal. Civ. Code § 51, *et seq*. (hereinafter "Unruh Act").

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188 for Plaintiffs' claims arising under the ADA.

11. The same events and omissions forming the basis of Plaintiffs' federal claims form the basis of their state-law claims. Thus, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) for claims arising under the Unruh Act.

12. This Court has authority to issue a declaratory judgment under 28 U.S.C. § 2201 and to order further relief under 28 U.S.C. § 2202. The Court has authority to issue injunctive relief under 42 U.S.C. § 12188.

## VENUE

13. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)–(c) because all Plaintiffs reside within this district; Defendants' business practices at issue were conducted throughout California, including in the Counties of Alameda and Contra Costa; and the events and omissions giving rise to the violations of law asserted herein have

occurred and continue to occur in this district.

## DIVISIONAL ASSIGNMENT

14. Pursuant to the Northern District of California's Civil Local Rule 3-2(c)–(d), since the events and omissions giving rise to Plaintiffs' claims occurred in Alameda and Contra Costa counties, the intradistrict assignment should be to the Northern District's Oakland Division or San Francisco Division.

## PARTIES

15. Plaintiff Jacqueline "Jan" Garrett (she/her) is an individual residing in Berkeley, California. She has a mobility disability and uses a motorized wheelchair, which she steers with her shoulders. Ms. Garrett cannot lift her luggage into and out of a vehicle due to her disability. She would use SuperShuttle but for the unavailability of wheelchair-accessible vehicles.

16. Plaintiff Kathi Pugh (she/her) is an individual residing in Berkeley, California. She has a mobility disability and uses a motorized wheelchair, and would use SuperShuttle but for the unavailability of wheelchair-accessible vehicles.

17. Plaintiff Dorene Giacopini (she/her) is an individual residing in Richmond, California. She has a mobility disability and uses a motorized wheelchair, and would use SuperShuttle but for the unavailability of wheelchair-accessible vehicles.

18. Defendant WHC Worldwide, LLC is a privately held limited liability company organized under the laws of the State of Missouri. WHC Worldwide, LLC is the parent company of Defendant WHC zShuttle, LLC, which provides airport transportation services throughout California, including in Contra Costa and Alameda Counties.

19. WHC zShuttle, LLC ("zShuttle") is a limited liability company organized and existing under the laws of the State of Missouri. WHC zShuttle, LLC is a wholly owned subsidiary of WHC Worldwide, LLC and is the parent company of SuperShuttle, SuperShuttle Express, and ExecuCar.

20. References in this document to "SuperShuttle" shall be deemed to include all named Defendants, unless otherwise stated.

21. Plaintiffs seek full and equal enjoyment of the goods, services, facilities,

privileges, advantages, and accommodations offered to the public by SuperShuttle.

## FACTUAL ALLEGATIONS

22. On information and belief, in April 2020, zShuttle acquired SuperShuttle International, Inc. As a result of this acquisition, SuperShuttle, SuperShuttle Express, and ExecuCar are now wholly owned subsidiaries of zShuttle.

23. On information and belief, zShuttle is one of the nation's largest providers of airport transportation services, specializing in arranging and providing direct, shared, and luxury transport to and from airports at over 70 locations.

24. On information and belief, zShuttle contracts with third-party affiliates whom it subjects to quality control and supervision mandates.

25. On information and belief, SuperShuttle provides airport transportation (directly or through third-party affiliates) serving San Francisco International Airport (SFO), Oakland International Airport (OAK), Los Angeles International Airport (LAX), San Diego International Airport (SAN), Maui's Kahului Airport (OGG), Honolulu's Daniel K. Inouye International Airport (HNL), Washington Dulles International Airport (IAD), Washington National Airport (DCA), Denver International Airport (DEN), and Seattle-Tacoma International Airport (SEA), among others.

26. On information and belief, SuperShuttle offers "Express Rides" where a customer can book a vehicle to transport them directly to their destination without stops; "Shared Ride Shuttles" where a customer can book a seat on a shuttle with other customers traveling in the same direction; and "Black car" service where a customer can book a private luxury vehicle.

27. On information and belief, SuperShuttle does not have any wheelchair-accessible vehicles with which to provide airport transportation service.

28. On information and belief, SuperShuttle does not contract with any third-party affiliates that have wheelchair-accessible vehicles with which to provide airport transportation service.

29. On information and belief, SuperShuttle owns or previously owned a wheelchair-accessible vehicle that fell into disrepair and has not been repaired.

30. By engaging in the discriminatory policies and practices described herein, SuperShuttle has denied Plaintiffs and other people with disabilities who require wheelchair-accessible vehicles the full and equal enjoyment of its goods, services, facilities, privileges, advantages, and accommodations, in violation of both state and federal law.

**A. <u>Jacqueline Garrett</u>**

31. Plaintiff Garrett is an individual residing in Berkeley, California. She has a mobility disability and uses a motorized wheelchair, which she steers with her shoulders. Ms. Garrett cannot lift her luggage into and out of a vehicle due to her disability. She would use SuperShuttle but for the unavailability of wheelchair-accessible vehicles.

32. Ms. Garrett travels often for work to attend conferences, facilitate trainings, and participate in professional panels, among other reasons. Every other year, Ms. Garrett also tries to travel for leisure to Maui, Hawaii, where she has a timeshare. Ms. Garrett travels via the Oakland International Airport or the San Francisco International Airport about seven to eight times per year.

33. Prior to the COVID-19 pandemic, Ms. Garrett used SuperShuttle's airport shuttle service several times to get to and from Bay Area airports and in other cities to which she traveled for work and personal travel. At that time, SuperShuttle offered wheelchair-accessible airport shuttles.

34. To make a reservation for a wheelchair-accessible airport shuttle, Ms. Garrett would call SuperShuttle about a week prior to her planned travel and found that she was always able to make a reservation. She was able to book airport shuttle rides for early morning flights for work trips with ease, and found that her airport shuttle was often early to pick her up, which was always a welcome surprise.

35. Upon pickup and drop off, the SuperShuttle vehicle operator lifted Ms. Garrett's luggage into and out of the shuttle for her.

36. The SuperShuttle vehicle operator was always well-versed in how to operate the shuttle accessibility features and made sure to pick up and drop off Ms. Garrett safely near a curb cut at the destination.

37. Ms. Garrett often shared these airport shuttle rides with other SuperShuttle patrons who did not have mobility disabilities.

38. In the past, Ms. Garrett paid a flat fee to take an accessible SuperShuttle ride to a Bay Area airport, based upon her pickup and drop off location. This fee was identical to that charged to SuperShuttle patrons who do not have mobility disabilities.

39. When Ms. Garrett returned to traveling following the COVID-19 pandemic, she again attempted to use SuperShuttle's airport transportation service, but found that the company no longer offers wheelchair-accessible airport shuttles. As a result, Ms. Garrett can no longer use SuperShuttle's airport transportation services.

40. As recently as late 2024, Ms. Garrett tried to reserve wheelchair-accessible airport shuttle rides through SuperShuttle from her residence in Berkeley to Oakland International Airport. When Ms. Garrett tried to make these reservations by phone, she was told by a SuperShuttle representative that the company does not have wheelchair-accessible vehicles that could take her to or pick her up from Bay Area airports, nor does the company know of any alternative wheelchair-accessible airport shuttle services she can use.

41. Since Ms. Garrett was unable to book airport shuttles through SuperShuttle for her travel, she instead had to coordinate with a paid attendant to take her to and from the airport. Ms. Garrett pays an hourly fee to the attendant, and estimates that she pays for three hours of time for each trip to or from the airport. This is because the attendant must commute to Ms. Garrett's home, drive Ms. Garrett in her own wheelchair-accessible vehicle to the destination airport terminal, return to Ms. Garrett's home to park and lock Ms. Garrett's vehicle, and then commute back to her own residence, which amounts to about three hours of time.

42. When Ms. Garrett is unable to locate an attendant who is able to drive her to the airport in her wheelchair-accessible vehicle, she has to find a different means of getting to the airport. In these circumstances, Ms. Garrett will drive her wheelchair to the Bay Area Rapid Transit ("BART") train station closest to her residence, which is the North Berkeley BART Station. Separately, her husband, who often travels with her and manages their heavy luggage, pays to take a non-accessible taxi or rideshare from their residence to the BART station where he

meets Ms. Garrett. Ms. Garrett and her husband then pay to take BART together to the airport. BART does not start service until 5:00 AM on weekdays, 6:00 AM on Saturdays, and 8:00 AM on Sundays, and ends service at midnight each day. Since BART service hours are limited, Ms. Garrett cannot use BART for travel to or from the airport for early morning or late night flights.

43. Ms. Garrett has future plans to travel via Oakland International Airport and San Francisco International Airport for work trips to Rancho Cucamonga, CA; Washington, DC; and San Diego, CA in 2025, and anticipates she will travel by air multiple times in 2026.

44. Ms. Garrett would use SuperShuttle for transportation to and from airports if the company had wheelchair-accessible vehicles.

**B. <u>Kathi Pugh</u>**

45. Plaintiff Kathi Pugh is an individual residing in Berkeley, California. She has a mobility disability and uses a motorized wheelchair. Ms. Pugh would use SuperShuttle but for the unavailability of wheelchair-accessible vehicles.

46. Ms. Pugh is now retired, but previously worked for almost 25 years at an international law firm for which she used to travel in and out of Bay Area airports every other month for work trips. At that time, Ms. Pugh regularly used SuperShuttle's airport transportation service without issue and was able to book wheelchair-accessible airport transportation to and from airports around the country for the same fee and service as everyone else.

47. In the past, Ms. Pugh also used SuperShuttle's accessible airport transportation services to get to and from the airport for personal trips.

48. Since SuperShuttle no longer offers wheelchair-accessible airport transportation, Ms. Pugh can no longer use SuperShuttle's airport transportation services.

49. Now that she is retired from her profession, Ms. Pugh primarily travels by air for leisure to visit friends and family, attend special events, and explore new places.

50. Ms. Pugh also traveled one or two times a year to participate in local, national, and international regattas. As she has done in the past, she was planning on flying to San Diego in April 2025 to attend the Challenged Sailors' KMAC Regatta April 25-27 along with other

members of the Bay Area Association of Disabled Sailors. Because of the lack of wheelchair-accessible transportation from the San Diego airport to Coronado Island, she was unable to attend. She could only attend if she could take her electric wheelchair.

51. Ms. Pugh is a longtime fan of bluegrass music and planned on attending the Telluride Bluegrass Festival located in Telluride, Colorado on June 19-22, 2025 along with four friends. She was planning on flying to Denver and spending a couple of days there either before or after the festival.

52. On February 27, 2025, Ms. Pugh received an email solicitation from SuperShuttle. She then tried to book a wheelchair-accessible ride online from the SuperShuttle website. When she was unable to do it online, Ms. Pugh called SuperShuttle to reserve wheelchair-accessible airport transportation for her upcoming travel. After waiting on hold to speak to a representative, Ms. Pugh asked for wheelchair-accessible transportation to and from the San Francisco, Oakland, San Diego, and Denver airports. The representative told her that SuperShuttle did not have any wheelchair-accessible vehicles at those airports. She then asked if SuperShuttle had wheelchair-accessible vehicles at any airports and the representative said, "No." Ms. Pugh then asked if SuperShuttle could make a reservation for her with an "Independent Operator[] who offer[s] accessible vehicles to customers with disabilities, including those who use wheelchairs" as stated on the SuperShuttle website under "Special Handing." The representative then put Ms. Pugh on hold while she checked with her supervisor. The answer again was "No."

53. Since Ms. Pugh was unable to book wheelchair-accessible airport transportation through SuperShuttle, she did not go to the regatta in April nor is she currently planning on attending the bluegrass festival in June.

54. If Ms. Pugh does want to travel, she would need to find a wheelchair-accessible ride to her local airport and from her destination airport. The only local options Ms. Pugh knows of are to pay an attendant to drive her in her own wheelchair-accessible vehicle to and from the airport, or to ask her husband to drive her and pay for long-term parking at the Oakland or San Francisco International Airports.

55. Ms. Pugh would use SuperShuttle for transportation to and from airports if the company had wheelchair-accessible vehicles.

56. Exclusion from SuperShuttle's airport transportation service limits Ms. Pugh's ability to travel. She is no longer able to take trips like going to Honolulu, Hawaii to visit family, which she used to regularly do. Because she is dependent upon using her electric wheelchair, she is excluded from traveling now that SuperShuttle no longer offers wheelchair-accessible airport transportation.

**C. <u>Dorene Giacopini</u>**

57. Plaintiff Dorene Giacopini is an individual residing in Richmond, California. She has a mobility disability and uses a motorized wheelchair. She would use SuperShuttle's airport transportation services but for the unavailability of wheelchair-accessible vehicles.

58. Ms. Giacopini is an avid traveler who loves to go on trips with her family and friends. Her last trip with family was to Italy in 2024. Ms. Giacopini's next trip with friends is a cruise disembarking from Seattle, Washington later this year. For her 2025 cruise trip, she will fly from Oakland International Airport to Seattle-Tacoma International Airport.

20. In March of 2025, Ms. Giacopini contacted SuperShuttle by phone to book wheelchair-accessible transportation for her upcoming flight to Seattle. A SuperShuttle representative told her that there are no wheelchair-accessible vehicles in any region serviced by SuperShuttle.

21. Since Ms. Giacopini was unable to reserve wheelchair-accessible airport transportation through SuperShuttle for her upcoming travel, she will likely have to choose a more expensive alternative.

22. Ms. Giacopini will likely have to pay an attendant to drive her in her own wheelchair-accessible vehicle to the airport terminal, and then the attendant will return and park her vehicle back in her garage. For her return flight, Ms. Giacopini will have to coordinate with a paid attendant and go through the same process to get back to her residence from the airport.

23. If Ms. Giacopini is unable to coordinate with a paid attendant who can drive her to and from the airport in her own vehicle, she will have to drive to the airport and pay to park

her vehicle in long-term airport parking. Then, Ms. Giacopini will take airport transit to get to her terminal. Due to Ms. Giacopini's disability, lifting her luggage into and out of a vehicle is difficult, so parking her car in long-term parking and carrying it onto and off of airport transit is challenging. Ms. Giacopini would prefer to use SuperShuttle's airport transportation services.

24. Ms. Giacopini would use SuperShuttle for transportation to and from Bay Area airports and for airport transportation at her destinations if the company had wheelchair-accessible vehicles. Door-to-door airport transportation service is not only a more affordable option for Ms. Giacopini compared to the alternatives, it is also more accessible because the shuttle driver is able to assist Ms. Giacopini with lifting her luggage into and out of the vehicle.

## CLASS ACTION ALLEGATIONS

59. Pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and all other persons similarly situated.

60. Plaintiffs seek certification of the following nationwide class: "all potential SuperShuttle customers who have mobility disabilities, use wheelchairs or other mobility devices, and have been excluded from SuperShuttle's airport transportation services due to the lack of wheelchair-accessible vehicles" (the "ADA Class"). This includes individuals who have attempted to use SuperShuttle airport transportation services, as well as those who have been deterred from attempting to use SuperShuttle airport transportation services as a result of the lack of wheelchair-accessible vehicles.

61. Plaintiffs seek only injunctive and declaratory relief on behalf of the ADA Class.

62. Each Plaintiff and member of the proposed ADA Class is a "qualified person with a disability" pursuant to the ADA, as alleged herein.

63. Plaintiffs are unable to state the precise number of potential members of the proposed ADA Class. However, according to a November 2018 report from the United States Census Bureau, an estimated 5.5 million American adults (2.3% of the population) have a

mobility disability that necessitates the use of a wheelchair.[3] Even if only a small portion of this total population were members of Plaintiffs' proposed ADA Class, it would still number in the tens of thousands. Thus, members of Plaintiffs' proposed ADA Class are sufficiently numerous that joinder of all members is impracticable.

64. Plaintiffs also seek certification of the following subclass: "all potential SuperShuttle customers who have mobility disabilities, use wheelchairs or other mobility devices, and have been excluded from SuperShuttle's airport transportation services in California due to the lack of wheelchair-accessible vehicles" (the "Unruh Subclass").

65. Plaintiffs seek only injunctive and declaratory relief on behalf of the Unruh Subclass.

66. Plaintiffs Garrett, Pugh, and Giacopini and each member of the proposed Unruh Subclass is a "person with a disability" pursuant to the Unruh Civil Rights Act, as alleged herein.

67. Plaintiffs are unable to state the precise number of potential members of the proposed Unruh Subclass, however applying the U.S. Census Bureau's estimate that 2.3% of the American adult population uses a wheelchair to California's estimated population of over 39 million[4], one could expect over 800,000 Californians to use a wheelchair. Again, even if only a small portion of this total were members of Plaintiffs' proposed Unruh Subclass, it would still number in the thousands. Thus, members of Plaintiffs' proposed Unruh Subclass are sufficiently numerous that joinder is impracticable.

68. There is a well-defined community of interest in the questions of fact and law involved affecting the parties to be represented in that they were all denied their civil rights to full and equal access to and use and enjoyment of SuperShuttle airport transportation services due to the same policies, procedures, and practices.

69. Common questions of fact and law predominate in that Plaintiffs and proposed

---

[3] Danielle M. Taylor, U.S. Census Bureau, *Americans with Disabilities: 2014*, Household Economic Studies 8 (Nov. 2018), *available at* https://www.census.gov/content/dam/Census/library/publications/2018/demo/p70-152.pdf.

[4] *QuickFacts: California*, U.S. Census Bureau, www.census.gov/quickfacts/fact/table/CA (last visited May 1, 2025).

class members are denied their right to have full and equal access to and enjoyment of Defendants' services.

70. Plaintiffs' claims are typical of the claims of the ADA Class and Unruh Subclass as a whole. Defendants' discriminatory actions, alleged herein, have harmed Plaintiffs and members of the proposed classes in ways that are either identical or substantially similar. Plaintiffs, by advancing their claims, will also advance the claims of all other similarly situated individuals.

71. Plaintiffs will fairly and adequately represent the interests of the class. Plaintiffs are adequate class representatives because they are directly impacted by Defendants' failure to ensure that people with mobility disabilities who need wheelchair-accessible vehicles have access to SuperShuttle's airport transportation services. The interests of Plaintiffs are not antagonistic to, or in conflict with, the interests of the proposed classes as a whole, and there are no material conflicts between Plaintiffs' claims and those of absent class members that would make class certification inappropriate.

72. Plaintiffs' counsel is highly experienced in disability rights and class action litigation and will vigorously assert Plaintiffs' claims and the claims of all class members.

73. Defendants have acted and/or failed to act on grounds generally applicable to the proposed classes as a whole, thereby making appropriate final declaratory and injunctive relief with respect to the classes as a whole.

74. References to Plaintiffs shall include each named Plaintiff and each member of the relevant proposed class, unless otherwise indicated.

## FIRST CAUSE OF ACTION ON BEHALF OF THE ADA CLASS

**Violation of Title III of the Americans with Disabilities Act**
**42 U.S.C. § 12181, *et seq*.**

**(For Injunctive Relief on behalf of Plaintiffs and the Proposed ADA Class)**

75. Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

76. Plaintiffs and members of the proposed ADA Class are individuals who have

physical impairments that substantially limit their ability to walk, stand, and lift, and thus are qualified individuals with disabilities within the meaning of the ADA. 42 U.S.C. § 12102(2)(a).

77. WHC Worldwide, LLC and zShuttle are private entities.

78. WHC Worldwide, LLC and zShuttle are primarily engaged in the business of transporting people to and from airports by over-the-road conveyance via a demand responsive service.

79. WHC Worldwide, LLC's and zShuttle's operations affect commerce.

80. WHC Worldwide, LLC and zShuttle operate private shuttle services that provide transportation between an airports and destinations in the areas it serves.

81. WHC Worldwide, LLC and zShuttle do not have any wheelchair-accessible vehicles and do not provide airport transportation services to individuals who require such vehicles.

82. Plaintiffs requested that WHC Worldwide, LLC take action to provide WAV airport transportation service at all U.S. airport locations to ensure wheelchair users have access to SuperShuttle's services on an equally available basis as non-wheelchair users. The company did not respond to Plaintiffs' request.

83. SuperShuttle's exclusion of individuals who require wheelchair-accessible vehicles from its airport transportation services impedes Plaintiffs' and proposed class members' access to SuperShuttle's services, which are available to those who do not have mobility disabilities that require use of a wheelchair-accessible vehicle.

84. SuperShuttle does not provide equivalent service to individuals who need wheelchair accessible transportation due to their mobility disabilities.

85. On information and belief, Defendants have failed to maintain in operative condition those features of vehicles that are required to make the vehicles readily accessible to and usable by individuals with disabilities, including lifts and other means of access to vehicles and securement devices; and promptly repair damaged or out of order accessibility features.

86. Defendants' conduct constitutes an ongoing and continuous violation of Title III, and unless restrained from doing so, Defendants will continue to violate the ADA. This conduct,

unless enjoined, will continue to inflict injuries for which Plaintiffs and members of the proposed class have no adequate remedy at law. Consequently, Plaintiffs and members of the proposed class are entitled to injunctive relief pursuant to the ADA, 42 U.S.C. § 12188(a), as well as reasonable attorneys' fees and costs, 42 U.S.C. § 12205.

87. WHEREFORE, Plaintiffs request relief as set forth below.

## SECOND CAUSE OF ACTION ON BEHALF OF THE UNRUH SUBCLASS

### Violation of the Unruh Civil Rights Act
### California Civil Code § 51, *et seq*.

**(For Injunctive Relief on behalf of Plaintiffs and the Proposed Unruh Subclass)**

88. Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

89. The Unruh Act guarantees, among other things, that persons with disabilities are entitled to "full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever" within the jurisdiction of the state of California. Cal. Civ. Code § 51(b).

90. As persons who have physical disabilities that affect body systems and limit their ability to walk, Plaintiffs Garrett, Pugh, and Giacopini and members of the proposed Unruh Subclass are persons with disabilities within the meaning of the Unruh Act. Cal. Civ. Code § 51(e)(1).

91. Defendants are business establishments within the jurisdiction of the state of California, and as such are obligated to comply with the provisions of the Unruh Act.

92. Defendants' conduct alleged herein constitutes a violation of the Unruh Act in that individuals with mobility disabilities who require wheelchair-accessible transportation are completely excluded from SuperShuttle's airport transportation services that are available to others. Cal. Civ. Code § 51(b).

93. Defendants admit that they are required to provide access to their services to wheelchair users, noting on their website: "In compliance with federal regulations, we provide reservations with Independent Operators who offer accessible vehicles to customers with

disabilities, including those who use wheelchairs[.]"[5] Their continued discriminatory actions and failures to act are both knowing and intentional.

94. Defendants have also violated the Unruh Act in that the conduct alleged herein constitutes a violation of Title III of the ADA and its implementing regulations, as set forth above. *See* Cal. Civ. Code § 51(f).

95. As a direct and proximate result of Defendants' aforementioned acts and omissions, Plaintiffs have suffered, and continue to suffer, injuries for which they have no adequate remedy at law.

96. Plaintiffs and other members of the proposed Unruh Subclass who need wheelchair-accessible transportation are entitled to injunctive relief remedying this discrimination pursuant to California Civil Code § 52.

97. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiffs and other members of the putative class will continue to suffer irreparable harm.

98. Pursuant to Cal. Civ. Code § 52, Plaintiffs are entitled to injunctive relief and to recover from Defendants the reasonable attorneys' fees and costs incurred in bringing this action.

99. WHEREFORE, Plaintiffs request relief as set forth below.

## THIRD CAUSE OF ACTION ON BEHALF OF NAMED PLAINTIFFS

**Violation of the Unruh Civil Rights Act**
**California Civil Code §§ 51, *et seq*.**

**(For Damages on behalf of Plaintiffs Garrett, Pugh, and Giacopini)**

100. Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

101. Under California Civil Code § 52, any person or entity that "denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51" is liable "for each and every offense for the actual damages . . . up to a maximum of three times the amount of

[5] *See* Terms & Conditions, *Special Handling – Accessible Transportation*, SUPERSHUTTLE EXPRESS, https://www.supershuttle.com/terms/ (last visited May 4, 2025) (click "Accessible Transportation" dropdown arrow under "Special Handling" section).

actual damage but in no case less than four thousand dollars ($4,000)."

102. Plaintiffs Garrett, Pugh, and Giacopini are thus entitled to actual and/or statutory damages, as well as attorneys' fees and costs, for each and every discriminatory offense described herein, in an amount to be determined at trial, and seek those damages on behalf of themselves only.

## FOURTH CAUSE OF ACTION

**Declaratory Relief**
**28 U.S.C. § 2201**

103. Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

104. Plaintiffs contend, and are informed and believe that Defendants deny, that SuperShuttle has failed to comply with applicable laws prohibiting discrimination against persons with disabilities and is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*; and the Unruh Civil Rights Act, California Civil Code § 51, *et seq.*

105. A judicial declaration, issued pursuant to the Court's authority under 28 U.S.C. § 2201, is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court provide the following relief:

1. A declaration that Defendants have discriminated against Plaintiffs and other people with disabilities who need wheelchair-accessible transportation, in violation of Title III of the ADA, 42 U.S.C. § 12181, *et seq.* and California Civil Code § 51, *et seq.* by failing to provide them with full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations; and 2) failing to reasonably modify its policies and procedures to provide them with wheelchair-accessible transportation.

2. A permanent injunction pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq*. and Unruh Civil Rights Act, Cal. Civ. Code § 51, *et seq*. requiring Defendants to take the steps necessary to ensure that people with disabilities who need

wheelchair-accessible transportation have full and equal enjoyment of their goods, services, facilities, privileges, advantages, or accommodations. Such injunctive relief may include, but not necessarily be limited to: 1) purchasing WAVs, 2) partnering with Independent Operators who have WAVs, 3) repairing currently owned WAVs so that they are functional, or 4) another equally effective alternative;

3. An award of Plaintiffs' attorneys' fees, costs, and expenses incurred in the filing and prosecution of this action, as authorized by 42 U.S.C. § 12205; and

4. Such other and further relief as the Court deems just and proper.

DATED: May 5, 2025

Respectfully submitted,

DISABILITY RIGHTS ADVOCATES

Meredith Weaver (CA Bar No. 299328)
MWeaver@DRALegal.org
Shawna Parks (CA Bar No. 208301)
SParks@DRALegal.org
Desiree Robedeaux (CA Bar No. 360254)
DRobedeaux@DRALegal.org
**DISABILITY RIGHTS ADVOCATES**
2001 Center Street, 3rd Floor
Berkeley, California 94704-1204
Tel: (510) 665-8644
Fax: (510) 665-8511

Rachel Weisberg (IL Bar No. 6297116), *pro hac vice* pending
RWeisberg@DRALegal.org
**DISABILITY RIGHTS ADVOCATES**
300 South Wacker Drive, Floor 32
Chicago, IL 60606-6680
Tel: (332) 217-2319
Fax: (212) 644-8636

*Attorneys for Plaintiffs*